IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LOREN PERNELL DOCK, #168 671,   )
                                )
        Plaintiff,              )
                                )
v.                              )   CIVIL ACTION NO. 2:11-CV-1061-TMH
                                )                [WO]
BOBBY BARRETT,                  )
                                )
        Defendant.              )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, a state inmate incarcerated at the Kilby Correctional Facility ["Kilby"]

located in Mt. Meigs, Alabama, filed this complaint on December 14, 2011.  He brings this

action pursuant to 42 U.S.C. § 1983 challenging his placement in segregation shortly after

his arrival at Kilby.  Plaintiff names Warden Bobby Barrett as the defendant.  He seeks

$50,000.00 in damages for mental anguish noting that he was not able to see his mother

before she passed away because he was in lock-up at Kilby.  Upon review of the complaint,

the court concludes that it is due to be dismissed prior to service of process pursuant to the

provisions of 28 U.S.C. § 1915(e)(2)(B).[1]

**I. DISCUSSION**

Beginning in January 2010, Plaintiff was incarcerated at the Mobile County Jail.  Due

---

[1] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint
screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  This screening procedure
requires the court to dismiss a prisoner's civil action prior to service of process, regardless of the
payment of a filing fee, if it determines that the complaint is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary damages from a defendant who is immune from
such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

to his propensity for engaging in fights with other inmates, Plaintiff spent time in lock-up as a result of receiving disciplinary infractions for his combative behavior.  Plaintiff's release from the county jail on April 27, 2011 was short-lived.  He was subsequently arrested on June 7, 2011 and returned to the county jail.  On August 25, 2011, Plaintiff was transferred to Kilby.  Plaintiff complains that approximately one month later, on September 21, 2011, he was placed on segregation as a result of the disciplinary actions he received at the county jail.  Plaintiff remained on segregation until November 29, 2011.  Doc. No. 1.

An essential element of a complaint filed under § 1983 is that the conduct complained of deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981).  Here, to the extent Plaintiff alleges a double jeopardy violation as a result of his assignment to segregation at Kilby for the same conduct which caused him to be placed on lock-up at the Mobile County Jail, such allegation entitles him to no relief.  An inmate's placement in segregation is not part of a criminal prosecution, and therefore does not implicate double jeopardy concerns.  *See Breed v. Jones*, 421 U.S. 519, 528 (1975) (application of the double jeopardy clause is limited to proceedings which are "essentially criminal").

Considering Plaintiff's claim as an allegation that his placement on segregation at Kilby violated his due process rights, he is likewise entitled to no relief on the facts alleged. The Supreme Court has identified two circumstances in which a prisoner, an individual

already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim*

*v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).   Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  Thus, the deprivation about which Plaintiff complains, without more, does not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Id*. at 484.  This court must therefore determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation."  *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.

-4-

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that Plaintiff's assignment to segregation at Kilby under the circumstances described, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. Plaintiff does not allege much less indicate that his confinement on segregation subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaints in relation thereto fail to state a due process claim. *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir. 1997).

## II.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's

complaint be DISMISSED with prejudice and prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i-ii).

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before January 27, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 13th day of January, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE